The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on June 5, 2019, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: June 5, 2019**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JACQUELINE HUGHLEY, | ) | Case No. 17-41946 |
|    Debtor. | ) | |
| | ) | Judge Arthur I. Harris |
| | ) | |
| LINDA E. HUFFMAN, | ) | |
|    Plaintiff. | ) | Adversary Proceeding |
| | ) | No. 18-4003 |
| v. | ) | |
| | ) | |
| JACQUELINE V. HOLDEN, | ) | |
|    Defendant. | ) | |

MEMORANDUM OF OPINION[1]

In 2016, creditor Linda E. Huffman obtained a default judgment in state court against the debtor, Jacqueline Hughley aka Jacqueline V. Holden, and the debtor's fiancé, Lawrence Holden. The default judgment was for unpaid rent and

---

[1] This Opinion is not intended for official publication.

water bills and for physical damage to the house that the debtor and Lawrence Holden had rented from the creditor.  After the debtor filed for bankruptcy, the creditor initiated this adversary proceeding seeking a determination that the portion of the default judgment attributable to the physical damage to the house is a nondischargeable debt "for willful and malicious injury by the debtor . . . to the property of another entity" under 11 U.S.C. § 523(a)(6).  For the reasons that follow, the Court finds that the creditor has failed to establish by a preponderance of the evidence that any portion of the default judgment is nondischargeable.

## JURISDICTION

The Court has jurisdiction over this action.  A determination as to the dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I).  This Court has jurisdiction over core proceedings pursuant to 28 U.S.C. § 157(a) and 1334 and Local General Order No. 2012-7, entered by the United States District Court for the Northern District of Ohio.

## PROCEDURAL HISTORY

On October 5, 2017, Jacqueline Hughley ("debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (Case No. 17-41946).  On November 17, 2017, the Chapter 7 trustee filed a report of no distribution, and on February 16, 2018, the debtor received a discharge (Case No. 17-41946, Docket Nos. 11 and 20).

2

On January 11, 2018, Linda E. Huffman ("creditor") filed an adversary complaint alleging that the debtor "knowingly, intentionally, maliciously, willfully, wantonly and in reckless disregard" damaged the house that the debtor and Lawrence Holden had rented from the creditor (Adv. Pro. Docket No. 1). On November 15, 2018, the creditor moved for summary judgment, asserting that the default judgment entered against the debtor in state court should be given issue-preclusive effect (Adv. Pro. Docket No. 27). On January 16, 2019, the Court issued a memorandum of opinion and order denying the creditor's motion for summary judgment (Adv. Pro. Docket Nos. 34 and 35). In short, the Court held that it could not be certain that the relevant issues were "actually and directly litigated" in state court (Adv. Pro. Docket No. 34 at 6-12).

A trial was held on March 13, 2019, and April 10, 2019. The Court heard testimony from the creditor, the debtor, and Cynthia Switka, a friend of the creditor who saw the condition of the house both before the debtor and her family moved in and immediately after they moved out. At the close of the creditor's case-in-chief, the debtor moved for judgment on partial findings pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable under Rule 7052 of the Federal Rules of Bankruptcy Procedure. The Court deferred ruling on this motion. The debtor then rested her case without presenting any additional testimony or exhibits. Subject to redaction under Bankruptcy Rule 9037, the Court admitted the creditor's

3

exhibits 1-113 over the debtor's objections and the creditor's exhibits 114-21 without objection. This memorandum constitutes the Court's findings of fact and conclusions of law as required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

FINDINGS OF FACT

The findings of fact contained in this memorandum of opinion reflect the Court's weighing of the evidence, including the credibility of each witness. In doing so, "the court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court considered the testimony of all the trial witnesses and all the exhibits admitted into evidence.

The creditor has rehabilitated several homes over the past five decades. In 2006, the creditor purchased 430 Tod Lane in Youngstown, Ohio. At that time, the creditor's own residence was located a few houses away on the same street. When the creditor purchased 430 Tod Lane, the property was uninhabited and in disrepair and had depressed the value of the creditor's own residence. Over the next several months, the creditor completed both interior and exterior renovations and repairs to the home, including installing new walls, plumbing, appliances, and windows.

After completing the renovations and repairs, the creditor lived at 430 Tod Lane for less than a year.

Eventually, the creditor decided to sell 430 Tod Lane. During the summer of 2009, the creditor met the debtor for the first time when the debtor came to a showing of the home. Although the debtor wanted to purchase 430 Tod Lane, the debtor's financial situation apparently hindered her ability to do so. Nevertheless, the creditor stopped looking for someone to purchase the property and allowed the debtor and her family to move in. When the creditor prepared the documents and brought them to the debtor at her previous residence, the state of the debtor's previous residence gave the creditor no indication that the debtor would fail to take proper care of 430 Tod Lane.

Around August or September of 2009, the debtor moved into 430 Tod Lane with her fiancé, Lawrence Holden, as well as a young daughter and an older daughter attending high school. When the debtor moved into 430 Tod Lane, the house was in immaculate condition. Although the parties initially entered into a rent-to-own agreement, that agreement fell through when the debtor failed to make timely payments. Ultimately, the sale of 430 Tod Lane to the debtor did not occur, and the debtor and her family lived as month-to-month tenants on the property for almost six years. The evidence presented at trial is not clear as to when the parties transitioned from the initial rent-to-own agreement to a month-to-month tenancy.

5

Interactions between the creditor and the debtor and other individuals living at 430 Tod Lane were not always smooth. The debtor did not always pay rent on time, but the creditor worked with the debtor when such missed payments occurred. Interactions were particularly strained between the creditor and Lawrence Holden, whom the creditor described as very negative and the opposite of the debtor. The creditor regularly felt uncomfortable and unwelcome during her encounters with Lawrence Holden. In addition, Lawrence Holden did not always give workmen who were sent to 430 Tod Lane permission to enter the home to complete repairs. The creditor received reports from workmen that made her concerned about the condition of 430 Tod Lane, but did not contact the debtor to arrange a time to inspect the property. The creditor testified that when she decided to sell 430 Tod Lane, Lawrence Holden took down the "for sale" sign and that the debtor only allowed one realtor access to the house; in contrast, the debtor testified that the realtor took down the "for sale" sign and that the debtor never refused to allow prospective buyers to see the property.

In January of 2015, the creditor decided that she was going to move back into 430 Tod Lane. The parties dispute how and when the debtor first received notice that the debtor and her family would have to leave the property. However, it is undisputed that by sometime in April of 2015, the debtor received notice by either a phone call from the creditor or by an April 14, 2015, letter sent by certified

6

mail and signed for by Lawrence Holden. The debtor and her family left sometime during the first week of June of 2015.

Upon taking repossession, the creditor found that 430 Tod Lane was no longer in the immaculate condition it was in before the debtor and her family moved in almost six years earlier. Through photographic evidence, the creditor documented various instances of damage to the property, including but not limited to: trash and belongings left on the curb and in the basement, two television satellite dishes left on the roof, rotted boards on the back deck, oil stains on the garage floor, oil tracked throughout the house, dirt and grease throughout the kitchen, broken tiles and rotted flooring, markings on the hardwood floors, stickers and spray paint on walls and mirrors, and broken towel rods and blinds (Creditor's Exhibits 1 through 74). In addition to providing photographic evidence, the creditor asserted that there were other problems with the property: various areas of the home smelled like mold, urine, and feces; the gas-burning fireplace was ruined by someone lighting a wood-burning fire inside of it; the basement drains were clogged by what the creditor suspected to be human waste; the drain in the garage was clogged with animal waste, cat litter, and oil; an ornamental light fixture in the driveway was broken by someone—allegedly a friend of the debtor—backing into it; the outdoor security lights were inoperable because the conduit and wires had been cut; and many of the appliances were no

7

longer functioning for various reasons, such as the dishwasher no longer working because it was clogged with food waste.

The creditor incurred substantial expenses cleaning and repairing 430 Tod Lane after the debtor and those living with the debtor left the property. Although not an exhaustive list, the creditor purchased new appliances to replace those that were no longer in working condition, brought in a high-pressure machine to clear out the drain in the garage, refinished the hardwood floors, replaced carpeting, repaired shelving units, and provided other general maintenance. As evidence of her costs to restore 430 Tod Lane, the creditor submitted invoices and receipts totaling $118,225.70 (Creditor's Exhibits 75 through 113).

On February 16, 2016, the creditor filed a complaint against the debtor and Lawrence Holden in the Mahoning County Court of Common Pleas, alleging that the debtor and Lawrence Holden "knowingly, intentionally, maliciously, willfully, wantonly and in reckless disregard of the rights of [the creditor] caused serious physical harm to the premises" during their tenancy (Creditor's Exhibit 114). On September 13, 2016, the magistrate granted the creditor's motion for a default judgment and awarded the creditor compensatory damages in the amount of $62,281.45, plus costs and interest, as well as $10,000 in punitive damages (Creditor's Exhibit 120). On October 13, 2016, the state court judge adopted the magistrate's decision in its entirety (Creditor's Exhibit 121).

After the creditor instituted garnishment proceedings against the debtor, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 5, 2017. On January 11, 2018, the creditor filed an adversary complaint seeking a determination that the portion of the default judgment attributable to physical damage to the house is a nondischargeable debt "for willful and malicious injury by the debtor . . . to the property of another entity" under 11 U.S.C. § 523(a)(6).

## CONCLUSIONS OF LAW

The issue in this adversary proceeding is not whether the debtor is liable under state law for damage to the creditor's property. The Mahoning County Court of Common Pleas has already determined that the debtor and Lawrence Holden are jointly and severally liable to the creditor in the amount of $62,281.45, plus costs and interest, as well as $10,000 in punitive damages. This Court does not stand in review of the state court's decision. Rather, the question at issue in this adversary proceeding is whether any portion of that state court judgment survives the debtor's Chapter 7 discharge under 11 U.S.C. § 523(a)(6).

Section 523(a)(6) provides in pertinent part:

(a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt –
> . . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity. . . .

9

11 U.S.C. § 523(a)(6). Exceptions to discharge "should be confined to those plainly expressed." *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)). In addition, exceptions to discharge are to be strictly construed in favor of the debtor. *Rembert v. AT&T Universal (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998) (citing *Mfrs. Hanover Trust v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir. 1988)). In seeking an exception to discharge, a creditor bears the burden of proof by a preponderance of the evidence. *Id.* (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)).

The scope of cognizable injuries under § 523(a)(6) is "broad, and refers to an economic injury . . . just the same as a physical assault on an individual[.]" *Weidle Corp. v. Leist (In re Leist)*, 398 B.R. 595, 605 (Bankr. S.D. Ohio 2008). To satisfy the requirements of § 523(a)(6), a creditor must demonstrate "that the debtor's conduct was *both* 'willful' and 'malicious.' " *Ward v. West (In re West)*, 446 B.R. 813, 815 (Bankr. N.D. Ohio 2010) (citing *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 157 (Bankr. N.D. Ohio 2003). Thus, conduct that is merely negligent or reckless is insufficient to except the resulting debt from discharge under § 523(a)(6). *Kawaauhau*, 523 U.S. at 61.

A finding of willfulness requires a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* (emphasis in original). Conduct is malicious "when it is '(1) a wrongful act, (2) done

intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.' " *CMEA Title Agency, Inc. v. Little (In re Little)*, 335 B.R. 376, 384 (Bankr. N.D. Ohio 2005) (citing *In re Sicroff*, 401 F.3d 1101, 1106 (9th Cir. 2005) (internal citations omitted)). Courts may consider circumstantial evidence of the debtor's state of mind to determine whether the conduct was both willful and malicious. *First Tennessee Bank Nat'l Ass'n v. Hansen (In re Hansen)*, 473 B.R. 240, 255 (Bankr. E.D. Tenn. 2012) (citing *J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 802 (Bankr. N.D. Ohio 2001)).

In *Kawaauhau*, the Supreme Court compared the "willful and malicious" standard of § 523(a)(6) to the legal standards for intentional torts, noting that "[i]ntentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.' " 523 U.S. at 62 (citing Restatement (Second) of Torts § 8A, comment *a*, p. 15 (1964)) (emphasis in original). Thus, the Sixth Circuit has stated that "only acts done with the intent to cause injury—and not merely acts done intentionally—can cause willful and malicious injury." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). "Unless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it' . . . he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Id.* (citing Restatement (Second) of Torts § 8A, comment *a,* p. 15 (1964)).

11

## "By the Debtor"

The plain language of § 523(a)(6) states that the willful and malicious injury must be caused "by the debtor." *See, e.g.*, *Greer v. Bruce (In re Bruce)*, 593 B.R. 765, 777 (Bankr. S.D. Ohio 2018) ("the willful and malicious injury has to be an injury '*by the debtor* to another entity or to the property of another entity[.]' ") (emphasis in original); *First Citizen's Nat'l Bank v. Murray (In re Murray)*, 2013 Bankr. LEXIS 5737, at *11 (Bankr. W.D. Tenn. Aug. 20, 2013) ("The majority of the time, courts have universally held that a person's willful and malicious actions cannot be imputed to another person for the purpose of holding that debt nondischargeable under § 523(a)(6)[.]") (citation omitted); *Thatcher v. Austin (In re Austin)*, 36 B.R. 306, 312 (Bankr. M.D. Tenn. 1984) ("application of vicarious liability would effectively vitiate the § 523(a)(6) requirement that only debts resulting from *willful* acts committed *by the debtor* be nondischargeable.") (emphasis in original); *see also Cocoma v. Nigam (In re Nigam)*, No. 14-1574, 2018 WL 3768990 at *10 (B.A.P. 10th Cir. Aug. 9, 2018); *Armstrong v. Oslin (In re Oslin)*, 584 B.R. 363, 373 (Bankr. D. Okla. 2018); *Sparks v. King (In re King)*, 258 B.R. 786, 796 (Bankr. D. Mont. 2001).

However, other courts—including courts in this district—have noted that there is no requirement in § 523(a)(6) that a debtor actually be the person who damages a creditor's person or property. *See, e.g.*, *O'Brien v. Sintobin (In re*

*Sintobin)*, 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000) (Speer, J.); *see also H. Park Partners, LLC v. Frick (In re Frick)*, 427 B.R. 627, 635 (Bankr. N.D. Ohio 2010) (Speer, J.); *Yash Raj Films (USA), Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120, 133 (Bankr. E.D.N.Y. 2007); *Tiffany Square Family v. Williams (In re Williams)*, 362 B.R. 838, 841 (Bankr. N.D. Ohio 2006) (Speer, J.). Nevertheless, this Court believes that under the precedent established by the Supreme Court in *Kawaauhau* and by the Sixth Circuit in *Markowitz*, for the debt to be nondischargeable under § 523(a)(6), the conduct must be the result of willful and malicious conduct *by the debtor*, such as the debtor directing someone to injure another person. In other words, just because the debtor may be jointly and severally liable to the creditor under state law for any damage to the rental property does not make the damage caused by the willful and malicious conduct of Lawrence Holden or any other individuals a nondischargeable debt of the debtor. *See, e.g.*, *In re Hansen*, 473 B.R. at 258 (bankruptcy court declined to find nondischargeable under § 523(a)(6) a debt for damage caused from meth lab run by debtors' grandson in debtors' basement).

To the extent that the damage to 430 Tod Lane was the result of intentional acts to injure the creditor's property, the creditor has failed to establish by a preponderance of the evidence that any of the damage was the result of intentional conduct "by the debtor." Three examples are instructive. As a first example, the

13

creditor established by a preponderance of the evidence that someone cut the conduit pipe and electrical wires to an outdoor security light with an intent to injure the creditor's property. However, the creditor failed to establish by a preponderance of the evidence that this act was done "by the debtor." Given the circumstantial evidence—that the creditor observed the debtor's previous residence and found it to be well-maintained, that the creditor found Lawrence Holden to be much less cooperative than the debtor and the opposite of the debtor, and that Lawrence Holden was responsible for maintaining the yard and exterior of the house—it is more likely that someone other than debtor cut the conduit pipe and electrical wires to the outdoor security light. Nor is there any credible evidence to suggest that the debtor directed Lawrence Holden or anyone else to intentionally cut the conduit pipe and electrical wiring.

A second example is the act of intentionally pulling out the raised metal edging along the brick walkways in the yard. Yes, the creditor established that someone intentionally pulled out this raised metal edging; however, the creditor's own testimony strongly suggests that Lawrence Holden was the one who pulled out the edging because he thought it interfered with his ability to mow the grass.

A third example is the act of intentionally placing chewing gum in several wall outlets and stickers on walls, door frames, and mirrors. Most likely, these acts were committed by a young child or young children. Could the debtor have been

14

negligent in the supervision of such children? Perhaps. But there is nothing in the record to show that the debtor instructed or encouraged the children to place the chewing gum in outlets or stickers on the walls, door frames, or mirrors. Nor is there anything in the record to suggest that the debtor's conduct was motivated by ill will or anger against the creditor or the creditor's property.

Similarly, to the extent that oil, dirt, and grease were intentionally tracked into the house by one or more individuals doing automotive work in the garage, the Court believes that such conduct is more likely attributable to Lawrence Holden or other individuals and not the debtor. Of course, this Court has no need to determine whether any portion of the default judgment would be nondischargeable as to Lawrence Holden, since Lawrence Holden is not in bankruptcy.

At trial, the creditor's attorney repeatedly cited *In re Sintobin*, in which Judge Speer concluded that the debtors could be held vicariously liable for damage to the creditor's rental property caused by the debtors' children and friends. In reaching this conclusion, Judge Speer pointed to five specific facts: (1) the debtors' children and friends caused damage to the house on multiple occasions; (2) the debtors failed to discipline their children or prevent their friends from visiting the house to avoid further damage; (3) the debtors failed to repair the damage or notify the creditor of the damages; (4) much of the damage seemed to occur when the relationship between the debtors and the creditor was deteriorating; and (5) the

15

debtors showed no remorse at trial for the damage.  253 B.R. at 831.  Accordingly, Judge Speer concluded that the debtors' "complete apathy over what occurred to the . . . house both influenced and encouraged their children and their friends to commit acts of vandalism against the house" and that "[the debtors], by their *omissions*, willfully and maliciously caused injury to [the creditor's property]." *Id.* (emphasis added).

The Court believes that the circumstances in the current proceeding are distinguishable from the circumstances in *In re Sintobin*.  For example, in the current proceeding, the creditor has failed to demonstrate by a preponderance of the evidence that the debtor encouraged her children, Lawrence Holden, or anyone else to damage the property.  Indeed, Judge Speer declined to impute such liability in other landlord/tenant disputes.  *See, e.g.*, *In re West*, 446 B.R. at 818 (declining to impute damages caused by the "roughhousing" of the debtor's children to the debtor, noting that "the facts presented in this case do not anywhere near approach the circumstances presented in *In re Sintobin*"); *In re Williams*, 362 B.R. at 841 (concluding that "the facts show only one instance of damage and no encouragement by the Debtor").  As succinctly noted by another court, *In re Sintobin* seems to suggest that there are only "certain limited instances in which the willful and malicious actions of one person may be imputed to another." *In re Murray*, 2013 Bankr. LEXIS 5737, at *12.  The Court does not believe that

16

such limited instances are met in this case, and to the extent that the Court's analysis in this proceeding differs from that of *In re Sintobin*, this Court respectfully declines to follow it.

*"Willful and Malicious Injury"*

The debtor, Lawrence Holden, and/or other residents and guests undoubtedly caused significant damage to 430 Tod Lane during their tenancy. But to the extent that the damage was the result of neglect, or even extreme neglect or recklessness on the part of the debtor or others, it simply falls outside the narrow exception for "willful and malicious injury" under § 523(a)(6) as established by the Supreme Court in *Kawaauhau* and by the Sixth Circuit in *Markowitz*. Indeed, even the reckless operation of a motor vehicle that results in serious injury or death does not constitute "willful and malicious injury" within the meaning of § 523(a)(6). *See Darling and Darling v. Garrett (In re Garrett)*, No. 05-1367 (Bankr. N.D. Ohio Dec. 14, 2005) (unintentionally causing an accident while knowingly driving without insurance is not willful and malicious injury under § 523(a)(6)).

While the creditor presented evidence of extensive damage to the property at 430 Tod Lane, "damage caused to a rental property, even if beyond that associated with normal wear and tear, does not automatically lead to a finding of nondischargeability." *In re West*, 446 B.R. at 817. Furthermore, "a debtor's negligence in failing to maintain a rental property will not be, without more,

17

sufficient" to find a debt nondischargeable. *Knowles v. McGuckin (In re McGuckin)*, 418 B.R. 251, 256 (Bankr. N.D. Ohio 2009).

In this proceeding, much of the damage to 430 Tod Lane seems to be a result of neglect to the property over time. The rotting floor boards and cabinets, stained carpeting and flooring, and grease- and dirt-covered walls are indicative of the debtor and her family's failure to clean and care for the property. But the creditor failed to prove that this damage was anything other than passively failing to maintain the property, and therefore failed to prove that this neglect, even if extreme, was underscored by the debtor's intent to cause harm to the creditor or the creditor's property. *See id.* ("persons intending to cause harm do not normally do so by passive acts, such as failing to properly clean and maintain another's property").

Additional examples of negligence, extreme neglect, and recklessness in the current proceeding include actions such as leaving the property in filthy condition, starting a wood fire in a gas fireplace with a closed flue, allowing weeds to grow in the beds and between the bricks in the walkways, failing to keep the deck clear of decaying leaves, failing to keep appliances in good working order, and accidentally knocking over an ornamental light post while driving a car. To the extent that appliances, blinds, sinks, and other items in the house were damaged or broken, the creditor has failed to establish that such actions resulted from the debtor's intent to

18

injure the creditor or the creditor's property. Nor has the creditor established that the debtor left household goods in the basement or at the curb for garbage pick-up because the debtor intended to injure the creditor or the creditor's property. Rather, the more likely explanation is that the debtor and other tenants simply ran out of money and time when they had to vacate 430 Tod Lane.

Certainly, the debtor, Lawrence Holden, and others residing at 430 Tod Lane were negligent in their duty to maintain the property. Nor did the Court find particularly credible the debtor's testimony that she kept the kitchen clean or that she regularly paid for Stanley Steemer to come and clean the carpets, particularly when the debtor struggled to pay the rent. But extreme negligence on the part of the debtor does not establish a claim of nondischargeability under § 523(a)(6).

The Court has carefully reviewed the creditor's evidence of damage to 430 Tod Lane that, along with unpaid rent and water bills, gave rise to the state court default judgment. Based on the absence of direct evidence, the Court can only speculate as to what actually happened during the almost six years that the debtor, Lawrence Holden, and others residing with them lived at 430 Tod Lane. Was it the debtor who caused most of the physical damage? Lawrence Holden? Their children? Other guests? The Court can never know with certainty what actually happened. Rather, the Court's task is simply to determine to the best of its ability whether the creditor has established by a preponderance of the evidence that

19

any portion of the default judgment falls within the exception for "willful and malicious injury" by the debtor under § 523(a)(6), as established by the Supreme Court in *Kawaauhau* and the Sixth Circuit in *Markowitz*. The Court finds that the creditor has failed to meet her burden as to any portion of the default judgment.

CONCLUSION

For the foregoing reasons, the Court finds that the creditor has failed to establish by a preponderance of the evidence that any portion of the default judgment entered by the Mahoning County Court of Common Pleas on October 13, 2016, is a nondischargeable debt as to the debtor-defendant Jacqueline Hughley aka Jacqueline V. Holden.

IT IS SO ORDERED.